[L. A. No. 14443. In Bank.—April 13, 1934.]

NORMAN LA RUE PHILP, Respondent, v. ETHEL LOUISE PHILP, Appellant.

Clarke & Bowker and Dixie Dunnigan for Appellant.

Golden & Kaufman for Respondent.

PRESTON, J.—This appeal by defendant from judgment for plaintiff, submitted on motion to dismiss appeal or affirm judgment, presents the main question of sufficiency of the evidence to support the conclusions of the court below.

On September 26, 1931, plaintiff and defendant, then husband and wife, executed a property settlement agreement, dividing equally their entire community estate and further providing that in the event plaintiff should be assessed upon an unsettled income tax claim, defendant would pay half of the assessment. On March 21, 1932, the United States government levied an extra assessment of $14,802.42, which plaintiff paid. Defendant refused to reimburse him as agreed and he therefore brought this action to recover from her half of said tax or the sum of $7,401.21. Defendant answered and also cross-complained, seeking impeachment of the property settlement for fraud. To the cross-action plaintiff pleaded a general denial and *res judicata* by reason of a divorce decree; later he added pleas of estoppel and laches.

The cause went to trial. Defendant endeavored to show that plaintiff, by deceit and fraudulent representations, had induced her to execute the property settlement at a time when she was in a worried, weakened mental and physical condition; that he took undue advantage of her trust and love for him, engendered by their marriage of more than twenty-two years; that she acted without independent advice, relying solely upon plaintiff's false assurances that they would be permanently reconciled.

It appears that about August 13, 1931, some few weeks prior to execution of said agreement, defendant filed against plaintiff an action for divorce, based on charges of adultery, wherein she sought an award of all their community prop-

erty. Plaintiff thereupon gathered together certain of the community assets and secreted himself. He was finally located on September 5, 1931, and served with summons. He immediately returned home, arriving about 1 o'clock in the morning, and forthwith effected with defendant what purported to be a sincere reconciliation, made in good faith with intent of full performance, it being also understood that defendant would dismiss her divorce action and that the parties would execute an agreement settling their property rights. However, plaintiff thereafter continued to live with defendant for only about two months. In November, 1931, he left for Reno, Nevada, to join one Mary Gilbert, defendant's sister-in-law, who was there securing a divorce and whom he later married. During the brief period of resumption by plaintiff and defendant of their marital relations, the property agreement here in question was executed and the divorce action was dismissed. To accomplish the latter result, it was necessary for defendant to secure new counsel as her then attorneys refused to dismiss the case.

Defendant claimed that so far as plaintiff was concerned, the reconciliation was but a pretense or gesture made for the sole purpose of securing her confidence and inducing her to give him a favorable property settlement and to dismiss her divorce complaint, thus relinquishing all chance of securing more than half of the community estate, together with the right to share in future community earnings and to claim support, maintenance and counsel fees. There was evidence that while plaintiff was evading service of summons in the divorce action he stated that he would return home, "soft soap" the defendant, get a property settlement out of her and then leave. Defendant claims that he did in fact succeed in doing just this and that her continuing love for him made her a willing victim for she believed that he would return to her as a dutiful husband; thus even over the protest of her attorneys, she hired new counsel to secure a dismissal of the divorce action and to draw up the property contract—a contract which was manifestly unfair to her, as it failed to account for substantial sums which had been paid out by plaintiff from the community assets. Further defendant asserted that her new attorney made no independent investigation, but merely followed her directions;

therefore she really acted without independent advice, in sole reliance upon the misrepresentations of plaintiff.

Plaintiff thereafter filed a Mexican divorce proceeding against defendant; she opposed the action and on November 30, 1931, commenced another divorce action against plaintiff, resting on allegations of cruelty. Plaintiff did not contest the case and on December 24, 1931, the court rendered therein its interlocutory decree in favor of defendant, which later became final, granting her a divorce and awarding to her the sum of $3,233.35, stated to be one-half of the community assets of the parties, which consisted of two accounts aggregating $6,466.71. In explanation of her failure to question the validity of the property settlement in said divorce proceeding, defendant stated that it was not until she heard of plaintiff's marriage in May, 1932, to said Mary Gilbert, that she finally became convinced that he would never return to her and that during the intervening period she had been worried, harassed and mentally, if not physically, ill.

Plaintiff, as above stated, in answering the cross-complaint, raised defenses of *res judicata* by reason of said divorce decree, estoppel and laches. Furthermore, resisting the charges of fraud on the merits, he offered evidence to show that he acted sincerely and in good faith in undertaking the reconciliation, in procuring the property agreement and in approving the dismissal of the first divorce proceeding. He testified that he resumed marital relations with defendant in good faith, but that after a few weeks, and about December 31, 1931, he was again forced to leave home by reason of her misconduct; that he had told her that if she wanted a property settlement, they could have it and that he would live at home for the sake of their boys if she would "leave Bromo Seltzer alone and stop nagging", but that she thought he was a liar and a thief and stole money from her and that she tried to poison herself and give herself gas; that the situation became so unbearable that he finally left her. Evidence was also received, which need not be detailed here, to show that the property settlement was equitable, just and fair to both parties, dividing equally their community estate, and that defendant was mentally capable and competent to contract throughout the period in question; that she was independently advised and through her several attorneys

knew and was at all times fully aware of her rights and of the consequences of dismissal of the first divorce action.

The court below, after hearing the cause, made findings and gave judgment for plaintiff. Defendant appealed, urging the insufficiency of the evidence to uphold the findings that the property settlement was just and fair and not induced by fraud, actual or constructive, on the part of plaintiff. She also contends that the said interlocutory decree of divorce, disposing of a small portion of the community assets, did not bar her attack upon the property settlement in this action and that the finding of laches was not justified. The last two questions need not be here discussed as they become immaterial in view of our conclusion that the court below was warranted, under the evidence, in refusing to set aside the property agreement.

We have examined the record with care and find, in the conflicting evidence, sufficient support for the findings upholding the validity of the property settlement agreement. In other words, it appears that said agreement made a full and fair division of the community estate and that defendant at all times had full knowledge of her rights in the premises. It was the privilege of the court below to credit the testimony and evidence of plaintiff that he entered upon the reconciliation with sincere motives and acted in good faith in his dealings with defendant and left her only because of the insufferable situation created by the continual differences arising between them.

The judgment is affirmed.

Curtis, J., Shenk, J., Thompson, J., and Waste, C. J., concurred.